**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| KANSAS ASSOCIATON FOR ) <br> MEDICALLY UNDERSERVED ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HEALTH METRIC SYSTEMS, INC., ) <br> A California Corporation, ) <br> Service on: ) <br> Tomas Moran, CEO ) <br> 640 Alger Drive ) <br> Palo Alto, CA 94306 ) <br> _____) | Case No. _____ |

## CIVIL COMPLAINT

COMES NOW Kansas Association for Medically Underserved ("KAMU") and in support of its Complaint states:

### PARTIES

1. KAMU, a Kansas non-profit corporation which was at all times material hereto the federally designated Primary Care Association of Kansas, conducts its affairs from its principal office at 700 SW Jackson Street, Suite 600, Topeka, Kansas 66603.

2. Health Metric Systems, Inc., ("HMS") is and was at all times material hereto, a for-profit corporation organized and existing under the laws of California, with its principal place of business at 640 Alger Drive, Palo Alto, California 94306.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) as the parties are of different states and the amount in controversy exceeds $75,000.00.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to KAMU's claim occurred in the state of Kansas.

**First Cause of Action**
**Breach of Contract**

5. On December 1, 2013, KAMU and HMS entered into a written contract for software subscription services.  See Exhibit A.  Pursuant to the contract, HMS promised to: a)  establish a software network system consisting of virtual private network ("VPN") connections between HMS' HIPAA-compliant cloud and the eleven Kansas health clinics associated with KAMU; b)  to process weekly data pulls from the Electronic Health Record ("EHR") systems of each of the eleven health centers for the management of patient information; and c)  to complete its services on or by April 30, 2014.  In consideration for HMS' promises, KAMU agreed to pay HMS the amount of $194,000.00.

6. KAMU performed all of the conditions, covenants, and promises required of it pursuant to the terms and conditions of the contract, including timely paying HMS.

7. KAMU twice extended the deadline for HMS to comply with its promises and complete the contracted services.

8. HMS breached its contractual obligations by failing and refusing to perform its promise to establish the software network system on or about April 30, 2014.  As late as November 2015, the network was functional in only one of the eleven clinics.

9. HMS' breach caused KAMU to suffer financial damages.

## Second Cause of Action
## Breach of Implied and Express Covenants of Good Faith and Fair Dealing

10. In support of is Second Cause of Action, KAMU incorporates by reference each and every allegation contained in paragraphs 1 through 9 as if restated verbatim here.

11. After failing to establish the VPN connections by April 30, 2014 as promised, HMS advised that it had created a procedure that would "work around" some of the issues with the clinics' software licenses that had stymied the project.  HMS informed KAMU its "work around" had been implemented in other clinics in the Kansas City area, and that it would be used to complete the KAMU contract.  Based on HMS' promise that the "work around" would result in HMS completing the contract, KAMU, in December 2014, extended the contract deadline and paid HMS an additional $17,530.00 as consideration.  As late as November 2015, HMS had not implemented the "work around," and only one of eleven clinics was connected and operating under the HMS cloud system.

12. HMS unfairly interfered with KAMU's rights to receive contract benefits. HMS made these bad faith promises to induce KAMU to extend the contract deadline and pay additional money to HMS.

13. Under California law, HMS had an implied duty of good faith and fair dealings under the contract, which it breached through its acts and omissions.

14. Paragraph 10.2 of the contract required the parties to mediate any contract disputes in good faith.

15. On July 29, 2016, the parties conducted confidential mediation and each party agreed to send representatives with settlement authority.  Upon completion of the mediation session, HMS disclosed that its representatives lacked authority to settle the dispute.

16. HMS breached its implied contractual covenant of good faith and fair dealings and its explicit duty of good faith to mediate the dispute and under the contract.

17. HMS' breaches caused KAMU to suffer damages.

### Third Cause of Action
### Fraud

18. In support of its Third Cause of Action, KAMU incorporates by reference each and every allegation contained in paragraphs 1 through 17 as if restated verbatim here.

19. Prior to signing the contract, HMS representatives knew specific conflicts and issues particularly with software licenses binding the clinics would complicate the establishment of HMS' software network system and delay completion of the contract beyond the April 30, 2014 completion date. Notwithstanding this knowledge, HMS representatives suppressed these facts from KAMU.

20. Following execution of the contract and paying the amounts of $116,640.00 on November 26, 2013, and $59,830.00 on December 23, 2013, HMS failed to meet the contract deadline of April 30, 2014.

21. After failing to perform by the contract deadline and meeting with KAMU representatives in December 2014, HMS promised it had developed a solution to "work around" the VPN connection problem to complete the software network. HMS made this promise without any intention of performing, yet it collected an additional $17,530.00 and a deadline extension from KAMU. At of the end of the contract term in November 2015, HMS had not implemented the "work around" sufficient to complete the contract.

22. HMS failed to fulfill its promises and representations to KAMU before and after the contact execution. HMS made the promises. HMS representatives knew their promises were false. HMS representatives knew their promises were false when they made

them, or they made them recklessly without knowledge of the truth of those statements. HMS representatives made the false statements with the intention of inducing KAMU to rely on them. KAMU reasonably relied on the statements first when entering into the contract, and second during the contract term. KAMU suffered damages as a result of the statements of HMS representatives.

WHEREFORE, KAMU prays the Court enter judgment in its favor and against HMS for breach of contract, breach of implied and express covenants of good faith and fair dealings, and fraud; for an award of actual damages in excess of $75,000.00; for punitive damages; for reasonable attorney's fees and costs incurred herein; and for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/Charles T. Engel
Charles T. Engel, S.Ct.No. 12304
Elizabeth A. Baker, S.Ct.No. 25942
ENGEL LAW, P.A.
800 SW Jackson, Suite 1000
Topeka, Kansas 66612
785-233-6700/785-233-6701 fax
chuck@engellawpa.com
betsy@engellawpa.com
Attorneys for Kansas Association for the Medically Underserved